**In re Robert L. MATHEWS, Debtor.**

**No. 3:05–bk–11050–JAF.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Jan. 18, 2007.

Richard R, Thames, Stutsman Thames & Markey, P.A., Jacksonville, FL, for Debtor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This case came before the Court upon the Trustee's Objection to Debtor Robert L. Mathews' ("Debtor") Claim of Exemptions ("Objection") and the Trustee's Motion for Turnover of Property of the Bankruptcy Estate ("Turnover"). A hearing was held on May 11, 2006 and May 25, 2006 (the "Hearing"). In lieu of oral argument, the Court directed the parties to submit memoranda in support of their respective positions. Based upon the evidence presented and the arguments of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Debtor claimed on his Schedule C as exempt as tenants by the entireties: (i) a boat slip at the Conch House Marina in St. Augustine (the "Boat Slip"); (ii) two parcels of real property located in Jacksonville which Debtor describes as the "Highway Avenue Property" and "Picketville Property"; (iii) household goods and furnishings owned by Debtor and his non-filing spouse, Joyce Mathews ("Mrs.Mathews"); and (iv) stock in First National Bank of Orange Park (the "Stock"). Debtor also claimed as exempt: (i) pursuant to Florida Statutes, § 222.14, an American Express Mutual Fund account (the "Mutual Fund Account") and (ii) as homestead, his and Mrs. Mathews' house located at 2620 Halperns Way, Middleburg, Florida (the "Homestead"). The Trustee objected to these claims of exemptions contending that: (i) the Boat Slip, household goods and furnishings, and Stock are not owned as tenants by the entireties; (ii) the Highway Avenue Property and Picketville Property are not exempt pursuant to §§ 222.29 and 222.30, Florida Statutes; (iii) the Mutual Fund Account is not exempt under Florida Statutes, § 222.14; and (iv) pursuant to 11 U.S.C. § 522(o), the value of the equity in the Homestead was increased by the payoff of the mortgage of $71,339.32 with intent to hinder, delay or defraud a creditor.

The Trustee filed an amended motion for turnover of, among other things: (i) the household goods and furnishings; (ii) one-half of the distributions received by Debtor and Mrs. Mathews post-petition as a result of the Stock surrender, including one-half of $85,000 cash, $1,785 in dividends and 4,250 shares of publicly traded stock in Ameris Bancorp; and (iii) one-half of the funds in the Mutual Fund account.

Due to the various objections to exemptions asserted by the Trustee, the Court will address the facts of each claim separately.

#### A. The Stock in First National Bank of Orange Park.

On May 24, 2006, Debtor filed an Amendment to Schedules B and C claiming as exempt 5,000 shares of First National Banc, Inc. common stock acquired through merger of First National Bank, Orange Park, Florida, and First National Banc, Inc. (the "New Stock"). The Trustee filed an objection alleging that the New Stock was not owned as tenancy by the entireties and that the second amended Schedule C was untimely.

At the Hearing, Debtor testified that he has been the president of Bob Mathews Construction Company, Inc. ("BMC") since BMC's inception in 1985. (Tr. Vol. I at p. 15, lines 20–25.) BMC employed between 30 to 50 employees while in business, and the nature of BMC's business was general contracting. (Tr. Vol. I at p. 15, lines 12–16, 20–24.) By 2003, BMC's annual gross receipts amounted to $20,287,798. (Tr. Vol. I at p. 17, lines 3–5.)

On his Schedule B, Debtor listed the Stock as jointly owned with a current market value of $100,000. (Trustee's Ex. 1; Debtor's Ex. 1.) Debtor and Mrs. Mathews purchased 5,000 shares of the Stock in 1999 for $100,000. (Tr. Vol. I at p. 23, lines 14–21; Trustee's Ex. 2; Debtor's Exs. 7 and 8.) The stock certificate for these shares is number 0063 and identifies the owner as "ROBERT L. MATHEWS or JOYCE M. MATHEWS (JTWROS)". (Trustee's Ex. 2; Debtor's Ex. 7.) In connection with the purchase of the Stock, on April 14, 1999, Debtor signed a document titled "STOCK CERTIFICATE REGISTRATION INSTRUCTIONS" ("Registration Form"), which states in pertinent part:

Legal form of ownership:

| _____ Individual | __X__ Joint Tenants with Rights of Survivorship |
| _____ Tenants in Common | _____ Uniform Gift to Minors |
| _____ Other _____ | |

(Trustee's Ex. 3; Debtor's Ex. 12.)

Debtor also testified at the Hearing that he was a director of First National Bank, Orange Park, Florida, Inc. from approximately the time he purchased the Stock up until the time he filed his bankruptcy petition. (Tr. Vol. I at p. 25, lines 2–9.) Debtor further admitted at the Hearing that he never filled out any forms associated with the Stock, that either "the people at Florida National" (Tr. Vol. I at p. 30, lines 8–10) typed up the Registration Form for him, that "somebody else[ ]" (Tr. Vol. I at p. 42, lines 23–24) wrote "JT TEN" on the "ELECTION FORM AND LETTER OF TRANSMITTAL" ("Election Form") (Trustee's Ex. 6; Debtor's Ex. 15), or that he merely received the items in evidence as they were titled and took no actions to change them. As a result, the stock certificate (Trustee's Ex. 2; Debtor's Ex. 7), Registration Form (Trustee's Ex. 3; Debtor's Ex. 12), "LETTER OF TRANSMITTAL" ("Letter of Transmittal") (Trustee's Ex. 4; Debtor's Ex. 13), Election Form (Trustee's Ex. 6; Debtor's Ex. 15), "SUNTRUST" exchange letter ("SunTrust Stock Exchange Letter") (Trustee's Ex. 7; Debtor's Ex. 16), "AFFIDAVIT OF LOSS AND INDEMNITY AGREEMENT" ("Loss Affidavit") (Trustee's Ex. 8; Debtor's Ex. 17), and Suntrust check (Trustee's Ex. 9; Debtor's Ex. 19) were all titled to Debtor and Mrs. Mathews as "Joint Tenants".

At some point in 2004, First National Bank of Orange Park merged with First National Banc, Inc. ("First National Banc"). (Tr. Vol. I at p. 33, lines 11–15.) Debtor and Mrs. Mathews surrendered the Stock for the New Stock. (Tr. Vol. I at p. 33, lines 16–19; see also Trustee's Ex. 4; Debtor's Ex. 13.) Debtor believes that a new stock certificate was issued but he is not sure whether he received one. (Tr. Vol. I at p. 33, lines 20–25 through p. 34, lines 1–11.) Debtor is certain that the new stock certificate for shares of First National Banc was titled the same way as the original stock certificate with First National Bank of Orange Park that he held with Mrs. Mathews. (Tr. Vol. I at p. 35, lines 8–16.) Senior vice president and chief lending officer of First National Bank of Orange Park, Robert Beaty (Tr. Vol. I at p. 119, lines 16–22), who has been a shareholder and employee of First National Bank of Orange Park and its successors

since its inception (Tr. Vol. I at p. 120, lines 4–7), testified that the First National Banc shares were titled the same way as the First National Bank of Orange Park shares. (Tr. Vol. I at p. 121, lines 5–12.) He also testified that the bank has no records to indicate that Debtor requested the title to the First National Banc stock be any different than the First National Bank of Orange Park stock. (Tr. Vol. I at p. 133, lines 7–12.)

On or about November 8, 2005, Debtor received a document from First National Banc titled "PROPOSED MERGER—YOUR VOTE IS VERY IMPORTANT" ("Notice of Proposed Merger"). (Trustee's Ex. 5; Debtor's Ex. 14.) The proposed merger was between First National Banc and ABC Bancorp, which is also known as Ameris Bancorp. (Tr. Vol. I at p. 38, lines 14–17.) Debtor first became aware that the merger might occur when he was a director of First National Banc. (Tr. Vol. I at p. 39, lines 13–19.) Debtor completed and mailed a proxy card voting for the merger. (Tr. Vol. I at p. 41, lines 5–13.)

Also during November 2005, Debtor received the Election Form. (Trustee's Ex. 6; Debtor's Ex. 15.) Debtor and Mrs. Mathews signed the document on November 21, 2005. (*Id.*) The document states that it must be signed by the registered holders exactly as the names appear on the stock certificates. (*Id.*) Debtor wrote in "Robert L. or Joyce M. Mathews". (Trustee's Ex. 6 at p. 3; Debtor's Ex. 15 at p. 3.)

On January 9, 2006, Debtor and Mrs. Mathews received a letter from the exchange agent, SunTrust, requesting the return of Certificate No. 0063 and stating that if they were unable to locate it, they should contact the Customer Service Department for assistance in replacing it (the "SunTrust Stock Exchange Letter"). (Trustee's Ex. 7; Debtor's Ex. 16.) In response to the SunTrust Stock Exchange Letter, Debtor contacted the Customer Service Department. (Tr. Vol. I at p. 46, lines 4–9.) He received the Loss Affidavit to complete in order to obtain the lost stock certificate. (Trustee's Ex. 8; Debtor's Ex. 17.) Debtor and Mrs. Mathews signed the affidavit on January 24, 2006 and mailed it to SunTrust shortly thereafter. (*Id.*)

After mailing back the Election Form and Loss Affidavit, Debtor and Mrs. Mathews received a check dated February 27, 2006 in the amount of $85,595. (Trustee's Ex. 9; Debtor's Ex. 19.) Debtor and Mrs. Mathews endorsed the $85,595 check and deposited it into their SouthTrust account. (Tr. Vol. I at p. 48, lines 20–23.) In addition to the $85,595 in cash, Debtor and Mrs. Mathews received 4,250 shares of stock in Ameris Bancorp on February 22, 2006, in exchange for surrendering their First National Banc shares. (Trustee's Ex. 27; Debtor's Ex. 20.) The stock certificate was titled "ROBERT L MATHEWS & JOYCE M MATHEWS JT TEN". (*Id.*) The back of the stock certificate states in part:

> The following abbreviations, when used in the inscription on the face of this certificate, shall be construed as though they were written out in full according to applicable laws or regulations:
>
> TEN COM—as tenants in common
> TEN ENT—as tenants by the entireties
> JT TEN — as joint tenants with right of survivorship
> and not as tenants in common
> UNIF GIFT MIN ACT— . . . . . . . . Custodian . . . . . . . .
> (Cust) (Minor)
> under Uniform Gifts to Minors Act . . . . . . . .
> (State)
> Additional abbreviations may also be used though not in the above list.

(*Id.*) Debtor has not taken any action to change how the stock certificate is titled. (Tr. Vol. I at p. 50, lines 23–25.)

Debtor admitted that he completed only two years of college (Tr. Vol. I at p. 15, lines 17–19), yet he also revealed at his

2004 exam that he learned about tenancy by the entireties when he took business law. (Tr. Vol. I at p. 27, lines 18–25.) Debtor's testimony that he knew of tenancy by the entireties is consistent with the fact that during April 2005, he signed two deeds on behalf of Bob Mathews Construction, Inc., transferring the Highway Avenue Property (Trustee's Ex. 19; Debtor's Ex. 32) and the Picketville Property (Trustee's Ex. 20; Debtor's Ex. 33) to himself and Mrs. Mathews as tenants by the entireties. Debtor's testimony that he did not know his lawyer wrote tenancy by the entireties on the deeds is not credible. (Tr. Vol. I at p. 77, lines 5–21.) Debtor is a sophisticated businessman who ran a multimillion-dollar business. He specifically stated at the Hearing that joint ownership of his assets was extremely important to him because when his father died, his mother had difficulty getting the money her husband had left for her. (Tr. Vol. I at p. 100, lines 24–25 through p. 101, line 1.) Debtor, therefore, wanted to ensure that Mrs. Mathews would not have to encounter the same difficulties that his mother went through. (Tr. Vol. I at p. 101, lines 1–4.) Furthermore, Debtor testified at the Hearing that he is "concerned when it says Robert L. and Joyce M." (Tr. Vol. I at p. 78, lines 2–3), and yet he also stated that he didn't bother to notice "tenancy by the entireties" on these documents because he's "not a lawyer, . . . that doesn't appeal to [him] or . . . it doesn't make any excitement to [him] one way or the other because . . . [he and Mrs. Mathews] own them together." (Tr. Vol. I at p. 78, lines 16–20.)

### B. *The household goods and furnishings.*

On Schedule B, Debtor listed household goods and furnishings owned by Robert L. Mathews and Joyce Mathews as tenants by the entireties at a total market value of

$23,200. Debtor testified that none of the property claimed as exempt predated the couple's wedding. (Tr. Vol. II at p. 18, lines 1–8.) The majority of the household furnishings were purchased approximately 22 years ago when Debtor and his wife moved from their former lake house to their current homestead. (Tr. Vol. II at p. 20, lines 7–11.)

All claimed furniture purchased after the marriage was paid for with checks written on the couple's joint bank account, which was funded by both Debtor and Mrs. Mathews' earnings. (Tr. Vol. II at p. 21, line 20 through p. 24, lines 2.) The household furnishings were insured under a single policy naming both Debtor and Mrs. Mathews. (Tr. Vol. II at p. 20, line 23 through p. 21, line 14; Debtor's Ex. 5.) Both Debtor and Mrs. Mathews participated in the decision to acquire most of their household belongings—Mrs. Mathews did most of the investigating with her husband participating in the ultimate purchase decision. (Tr. Vol. II at p. 18, line 20 through p. 19, line 5.) The couple also fully intended that whatever interests remained in the personal property upon either of their deaths would pass to the other outside probate. (Tr. Vol. II at p. 19, lines 12–21.)

### C. *The Conch House Boat Slip.*

Debtor lists on Schedule A the Boat Slip owned jointly with Mrs. Mathews at a market value of $60,000. On the petition date, Debtor and Mrs. Mathews owned a boat which was docked at the Boat Slip. (Tr. Vol. I at p. 66, lines 4–10.) On November 1, 2000, Debtor and Mrs. Mathews purchased the Boat Slip for approximately $60,000 to $65,000. (Tr. Vol. II at p. 49, lines 7–10.) The cash portion of the purchase price was paid with funds drawn from the couple's checking account. (Tr. Vol. II at p. 49, lines 18–22.) The balance of the purchase price, $55,000, was bor-

rowed from First National Bank (Tr. Vol. I at p. 66, line 12 through p. 67, line 9; Trustee's Ex. 14; Debtor's Ex. 24), and a promissory note was executed and delivered on November 6, 2000, which was signed by both Debtor and Mrs. Mathews. (Tr. Vol. I at p. 67, lines 19–23; Trustee's Ex. 14; Debtor's Ex. 24.) A Deed of License to the Boat Slip (the "Deed") was executed and delivered to Debtor and Mrs. Mathews on or about November 1, 2000. (Trustee's Ex. 14; Debtor's Ex. 24.) Both names appear on the Deed with an ampersand between their names. (*Id.*)

### D. *The Mutual Fund Account.*

On his Schedule B, Debtor listed the Mutual Fund account as jointly owned having a value of $10,659.52. He claimed it as exempt pursuant to Florida Statutes, § 222.14. Debtor and Mrs. Mathews opened the account on March 7, 1997. (Trustee's Ex. 11 at p. 13; Debtor's Ex. 21 at p. 13; Tr. Vol. I at p. 57, line 18 through p. 58, line 7.) The application to open the account (the "Investment Application") shows that it is a mutual fund and not an annuity, IRA or qualified plan. (Trustee's Ex. 11 at p. 1; Debtor's Ex. 21 at p. 1.) The Investment Application states in the upper right hand corner of the first page:

Distribution of monies covering purchases on this application:

| | |
|---|---|
| Mutual Funds | $ 7,000 |
| IDS Certificates | |
| Limited Partnerships | |
| IRA or Qualified Plans | |
| Life Insurance | |
| Annuities | |
| Total of check(s) | $ 8,000 |

(*Id.*) The initial $7,000 investment was used to purchase shares of New Dimension's Fund, Inc. (*Id.* at p. 6.)

Section C of the Investment Application required Debtor and Mrs. Mathews to list their form of ownership. (*Id.* at p. 3.)

They checked the box labeled "Joint Tenant (JT)". (*Id.*) Section C also contained a box for tenants by the entirety under the heading "Other Joint Ownerships". The box stated:

☐ Tenants by Entirety—First client and second client as tenants by entirety. Available only between husband and wife in the states of: AR, DE, D.C., FL, HI, NY, MD, MA, MS, MO, NJ, OK, PA, RI, TN, VT, VA, WA, WY.

(*Id.*) Debtor and Mrs. Mathews did not check the tenants by entirety box, but instead checked the Joint Tenant box. The account statement for the Mutual Fund Account (the "Account Statement") also lists Debtor and Mrs. Mathews as owning the account as joint tenants. (Debtor's Ex. 22.)

Debtor testified that he did not read the entirety of the Investment Application, and instead relied on his broker to complete the application in accordance with his directions. (Tr. Vol. II at p. 52, line 25 through p. 53, line 11.) He further testified that he simply instructed the broker to open the account in both his and his wife's names. (Tr. Vol. II at p. 53, lines 12–16.) The Court does not find this testimony credible. As stated previously, Debtor is a sophisticated businessman who ran a multimillion-dollar business, and Debtor specifically stated that joint ownership of his assets was extremely important to him because of what transpired when his father died. (Tr. Vol. I at p. 100, lines 24–25 through p. 101, line 1.) The Court does not believe that the broker would not have asked Debtor which form of ownership he preferred when given a compendium of options from which to choose. Furthermore, Debtor never took steps to correct the form of ownership when he received his Account Statement, which listed Debtor and his wife as own-

ing the Mutual Fund Account as joint tenants.

### E. *The Highway Avenue and Picketville properties.*

On April 8, 2005, Debtor borrowed $388,000 from First National Bank. (Trustee's Exs. 15 and 28; Debtor's Exs. 26, 27 and 28.) He received from the loan checks for $231,952.23 and $4,236.78 (Trustee's Ex. 16; Debtor's Ex. 29; Tr. Vol. I at p. 72, lines 5–21); the remainder of the loan paid for closing costs and paid off prior loans. (Debtor's Ex. 26.) Debtor and Mrs. Mathews pledged commercial property located at 3599 Lenox Avenue, Jacksonville, Florida (the "Lenox Avenue Property") as collateral for the loan. (Trustee's Ex.·15; Debtor's Exs. 26 and 28.) Debtor and Mrs. Mathews own this property jointly, as tenants by the entireties. They both signed the mortgage. (Debtor's Ex. 28.) Mrs. Mathews did not sign the HUD–1 Settlement Statement. (Trustee's Ex. 15; Debtor's Ex. 26.) Only Debtor was identified on the HUD–1 Statement as the borrower and only Debtor signed it. (*Id.*) The two checks for the loan proceeds were made payable only to Debtor and not Mrs. Mathews. (Trustee's Ex. 16; Debtor's Ex. 29.) Only Debtor, not Mrs. Mathews, signed the promissory note. (Trustee's Ex. 28; Debtor's Ex. 29.) Mrs. Mathews testified at her deposition that she had nothing to do with the refinancing of the Lenox Avenue Property and that all decisions regarding such were made by Debtor. (Tr. Vol. II at p. 10, line 9 through p. 11, line 2.)

Debtor deposited the $231,952.23 check into his and Mrs. Mathews' SouthTrust Bank account. (Trustee's Ex. 17; Debtor's Ex. 30; Tr. Vol. I at p. 73, lines 6–17.) On April 23, 2006, Debtor wire-transferred from this account $105,000 to his attorney's account for the purpose of purchasing the Highway Avenue Property and Picketville Property. (Trustee's Exs. 17 and 18; Debtor's Exs. 30 and 31; Tr. Vol. I at p. 73, line 18 through p. 75, line 5.) The source of this $105,000 was the $231,952 Debtor borrowed from First National Bank in April 2005. (Tr. Vol. I at p. 75, lines 6–16.)

Debtor purchased the Highway Avenue and Picketville properties from BMC. The deeds to both properties (which contain the legal descriptions), dated April 12, 2005 and April 14, 2005, respectively, show BMC as grantor and "Robert L. Mathews and Joyce M. Mathews, as tenants by the entireties", as grantee. (Trustee's Exs. 19 and 20; Debtor's Exs. 32 and 33; Tr. Vol. I at p. 75, line 17 through p. 77, line 4.) Debtor testified that he borrowed the funds from First National Bank to purchase from BMC the Highway Avenue Property and Picketville Property so that BMC would have an injection of money to pay its overhead. (Tr. Vol. I at p. 87, lines 7–18.)

### F. *The Homestead transaction.*

On April 11, 2005, Debtor pre-paid the balance of the mortgage owed on his Homestead by writing a check to the mortgage holder, SouthTrust Bank, in the amount of $71,339.32. (Trustee's Ex. 22; Debtor's Ex. 35; Tr. Vol. I at p. 81, 6–19.) On April 18, 2005, Debtor paid off the balance of the debt owed on the Conch House Boat Slip by delivering a check to the lien holder, First National Bank, in the amount of $29,138.10. (Trustee's Ex. 21.) The source of these payments was also the $231,952.23 loan proceeds. (Tr. Vol. I at p. 81, lines 2–5, and p. 113, lines 3–9.)

### CONCLUSIONS OF LAW

Given the numerous objections, the Court will address each issue in turn.

### A. *The Court's view of Beal Bank with respect to personal property.*

Under Florida law, if a married couple holds property as a tenancy by the entireties,

> each spouse is said to hold it per tout, meaning that each spouse holds the whole or the entirety, and not a share, moiety, or divisible part. Thus, property held by husband and wife as tenants by the entireties belongs to neither spouse individually, but each spouse is seized of the whole.

*Beal Bank, SSB v. Almand and Assoc.*, 780 So.2d 45,·53 (Fla.2001) (internal quotations and citations omitted). Consequently, if a married couple holds property as tenants by the entireties, that property cannot be reached to satisfy the debts of one spouse, but can only satisfy joint debts. *In re Daniels*, 309 B.R. 54, 56 (Bankr.M.D.Fla.2004). Property held as tenants by the entireties does not, therefore, become property of the bankruptcy estate when only one spouse has filed a bankruptcy petition.

With respect to personal property held as tenants by the entireties, historically Florida courts routinely imposed on the debtor the burden of proving an intention to hold such personalty as a tenancy. *See, e.g., In re Bundy*, 235 B.R. 110, 112 (Bankr.M.D.Fla.1999) (citing *In re Stanley*, 122 B.R. 599, 604 (Bankr.M.D.Fla. 1990) (citation omitted)). Moreover, this burden was not met simply by the debtor's self-serving testimony—documentary proof of joint ownership was required. *In re Allen*, 203 B.R. 786, 791 (Bankr. M.D.Fla.1996) ("To prove such intent, there must [be] more than mere testimonial assertions by the Debtor, and some documentary proof is needed.") (citing *Stanley*, 122 B.R. at 604). Additionally, the proof had to "assure that the tenancy was not a hurried, after-the-fact creation used for purposes of insulating property from the claims of creditors of one of the spouses." *Stanley*, 122 B.R. at 604 (citations omitted).

In real property matters, on the other hand, Florida has long followed the rule that real property titled in both a husband and wife's name is presumed to be held as a tenancy by the entireties. *First Nat'l Bank of Leesburg v. Hector Supply Co.*, 254 So.2d 777, 780 (Fla.1971) (citations omitted). In *Beal Bank*, the Florida Supreme Court was asked to reconcile these inconsistent positions and decide whether there should be a presumption of tenants by the entireties in certain personal property, specifically bank accounts. 780 So.2d at 57. In holding that bank accounts—when the unities required to establish tenancy by the entireties existed and when the signature card of the account does not expressly disclaim tenancy by the entireties—should also enjoy a presumption of tenants by the entireties, the Florida Supreme Court noted in dicta that the same presumption should apply for all personalty held by married couples. *Id.* at 57–59.

The Court has already decided that the presumption of tenancy by the entireties in *Beal Bank* does not extend to all personal property but rather just to bank accounts. *See In re McAnany*, 294 B.R. 406, 408–09 (Bankr.M.D.Fla.2003). The Court made this decision despite state case law from the Fourth District Court of Appeal which held that the *Beal Bank* presumption applied to stock certificates, *Cacciatore v. Fisherman's Wharf Realty Ltd. P'ship*, 821 So.2d 1251, 1252 (Fla. 4th Dist.Ct.App.2002), and in dicta further opined that the presumption should apply to all personal property. *Id.* at 1253–54. Since then, two bankruptcy courts have applied the *Beal Bank* presumption to other personal property: a Middle District

court applied the presumption to a debtor's automobile titled in both the husband and wife's names, *In re Daniels,* 309 B.R. 54, 59 (Bankr.M.D.Fla.2004) (finding that while the *Beal Bank* presumption applies to all marital personal property, a court cannot apply the presumption unless there is an ambiguity or uncertainty in the title of the property), and a Southern District court applied the presumption to household furnishings, *In re Kossow,* 325 B.R. 478 (Bankr.S.D.Fla.2005) (holding that the *Beal Bank* presumption applies to all personal property where the married couple acquired the property with all concomitant unities required for tenancy by the entireties). These cases indicate a trend toward recognizing a presumption of tenancy by the entireties for all personal property, not merely real estate. And yet, there still is no direct precedent currently before the Court mandating such a finding. However, considering the policy justifications supporting the trend, and in the interest of providing a halcyon sea in the eye of the storm of ambiguity, the Court agrees that if all the unities are present, a presumption should arise that a married couple owns personal property as tenants by the entireties. In this respect, the Court recedes from its prior ruling in *McAnany.*

**B. *The Stock is not owned as tenants by the entireties.***

■ The *Beal Bank* presumption forces an objecting party to prove by a preponderance of the evidence that a tenancy by the entireties was not created. *Beal Bank,* 780 So.2d at 58–59. A preponderance of the evidence is "the greater weight of evidence, such that when weighed with that opposed to it, the evidence supplied has more convincing force and is more probably true and accurate." *Whitaker v. J R Produce Corp. (In re Gulf N. Transp., Inc.),* 340 B.R. 111, 120 (Bankr.M.D.Fla. 2006) (quoting *In re Suncoast Towers E.*

*Assocs.,* 241 B.R. 476, 480 (Bankr.S.D.Fla. 1999) (citation omitted)). Based on the evidence presented, the Trustee proved that Debtor does not own the Stock with his wife as tenants by the entireties.

■ Under § 522(b)(2)(B) of the Bankruptcy Code, an individual is entitled to exclude from his or her individual bankruptcy estate

> any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety ... to the extent that such interest as a tenant by the entirety ... is exempt from process under applicable nonbankruptcy law.

11 U.S.C. § 522(b)(2)(B) (2005). The nature of a bankrupt's interest in property is determined by state law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). A valid tenancy by the entireties requires certain unities to be present:

> Property held as a tenancy by the entireties possesses six characteristics: (1) unity of possession (joint ownership and control); (2) unity of interest (the interests in the account must be identical); (3) unity of title (the interests must have originated in the same interest); (4) unity of time (the interests must have commenced simultaneously); (5) survivorship; and (6) unity of marriage (the parties must be married at the time the property became titled in their joint names). Because of the sixth characteristic—unity of marriage—a tenancy by the entireties is a form of ownership unique to married couples.

*Beal Bank,* 780 So.2d at 52. This is because a tenancy by the entireties is "essentially a joint tenancy, modified by the common law doctrine that the husband and wife are one person." *First Nat'l Bank of Leesburg,* 254 So.2d at 780 (quoting *En-*

*glish v. English*, 66 Fla. 427, 63 So. 822, 823 (1913) (quoting 15 AMER. & EMG. ENCY. OF LAW (2nd ed.) 847)).

 While there is a presumption that Debtor owned the Stock with Mrs. Mathews as tenants by the entireties, the Trustee has proven by a preponderance of the evidence that a tenancy was not created. The original stock certificate for the Stock of First National Bank of Orange Park is specifically titled "ROBERT L. MATHEWS OR JOYCE M. MATHEWS (JTWROS)". The Registration Form was checked off as "Joint Tenants with Right of Survivorship". Debtor testified, and Mr. Beaty confirmed, that the First National Banc stock certificate was titled the same way as the First National Bank of Orange Park stock certificate. Even though Debtor was a director of the bank, he never took any steps to change how the original stock certificate was titled.

On the Election Form relating to the Ameris Bancorp merger, Debtor wrote in "Robert L. or Joyce M. Mathews". The Ameris Bancorp stock certificate issued postpetition is titled "ROBERT L MATHEWS & JOYCE M MATHEWS JT TEN". Debtor took no action to have the New Stock titled as tenants by the entireties.

Debtor wanted to ensure that he owned all personal property jointly with his wife, Mrs. Mathews, and he testified that he intended to own it jointly with Mrs. Mathews because if he died before her, it would go straight to her without the necessity of probate. With a joint tenancy, the property would go to Mrs. Mathews without her having to fight in probate court. As a sophisticated businessman, Debtor knew what he was doing and fully intended to own the Stock as joint tenants with right of survivorship. Debtor expressly disclaimed ownership as tenancy by the entireties. Thus, the Trustee has proven by a preponderance of the evidence that a tenancy by the entireties was not created.[1]

 Accordingly, one-half of the 5,000 shares of New Stock is property of the bankruptcy estate. Section 541(a)(6) states that "[p]roceeds, product, offspring, rents, and or profits of or from property of the estate ...." are property of the bankruptcy estate. 11 U.S.C. § 541(a)(6) (2005). "Stocks and other forms of securities are regarded as interests in property, and thus as property of the estate." *Allen v. Levey (In re Allen)*, 226 B.R. 857, 865 (Bankr.N.D.Ill.1998) (citation omitted). Post-petition "[p]roceeds, product, offspring, rents, and or profits of or from property of the estate" are reachable by the trustee if they stemmed from property of the estate. *See, e.g., In re Alstad*, 265 B.R. 488, 490 (Bankr.M.D.Fla.2001) (holding proceeds from a non-compete agreement as property of the estate and stating that "when post-petition payments 'are sufficiently rooted in the pre-bankruptcy past,' such income will pass to the estate.") (quoting *Segal v. Rochelle*, 382 U.S. 375, 380, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966)). Therefore, pursuant to 11 U.S.C. § 541(a)(6), one-half of the $85,000 in cash,

---

1. The Trustee raises the argument that the stock is not exempt for the additional reason that Debtor did not claim it as exempt until filing his amended Schedule C on May 24, 2006. The Trustee cites *Doan v. Hudgins*, 672 F.2d 831, 833 (11th Cir.1982), for the proposition that Schedule C may be amended at any time before the case is closed, but a court might deny leave to amend on a showing of a debtor's bad faith or prejudice to creditors.

The Trustee avers that Debtor knew First National Bank of Orange Park merged with First National Banc, and further expected, as a director, prior to the petition date that a merger with Ameris Bancorp was possible. Because the Court agrees that the Stock is not owned as tenants by the entireties, the Court need not address this extraneous issue raised by the Trustee.

$1,785 in postpetition dividends and 4,250 shares of Ameris Bancorp stock received postpetition as a result of the First National Bancorp stock is property of the bankruptcy estate and must be turned over to the Trustee.

### C. *The household goods and furnishings are owned as tenants by the entireties.*

With respect to the household goods and furnishings, the Court finds that the Trustee did not satisfy the *Beal Bank* presumption in proving that a tenancy by the entireties was not created. *See Beal Bank,* 780 So.2d at 58–59. He presented no evidence that any of the household belongings claimed as exempt were purchased outside the term of the marriage, no evidence that non-marital funds were used to acquire the property claimed as exempt, and no evidence that joint ownership between Debtor and Mrs. Mathews was not intended. None of the property claimed as exempt predated the couple's wedding. The majority of the household furnishings were purchased approximately 22 years ago when Debtor and Mrs. Mathews moved from their former lake house to their current homestead. The furniture purchased after the marriage was paid for with checks written on the couple's joint bank account, which was funded by both Debtor and Mrs. Mathews' earnings. The household furnishings were insured under a single policy naming both Debtor and Mrs. Mathews. Both Debtor and Mrs. Mathews participated in the decision to acquire most of their household belongings. The couple also fully intended for the furniture and household goods to pass to the other upon either of their deaths.

As a result, all of the unities required for a tenancy by the entireties exist. Debtor and Mrs. Mathews have joint ownership and control of the furniture and household goods, thus satisfying unity of possession. Their interests in the furniture arose at the same time. Survivorship also exists, as does unity of marriage and unity of interest. In addition, unity of title is established through the insurance documentation and the joint acquisition of the property through the use of joint funds. The Trustee offered no proof to rebut this evidence. Therefore, the Trustee's objection to Debtor's claim of exemption for the jointly owned furniture and household belongings is overruled.

### D. *The Conch House Boat Slip is owned as tenants by the entireties.*

The Court finds that the Boat Slip is owned as tenants by the entireties, regardless of whether it is considered real property or personal property. As the Court previously stated, in Florida, real property titled jointly in the name of a husband and a wife is presumed to be owned as tenants by the entireties. *First Nat'l Bank of Leesburg v. Hector Supply Co.,* 254 So.2d 777, 780 (Fla.1971) (citations omitted). The Deed to Debtor and Mrs. Mathews for the Boat Slip conveyed an interest in real estate, and since the Deed was titled jointly in both Debtor and Mrs. Mathews' names, there is a presumption that the Boat Slip is owned as tenants by the entireties.

Even if the Court were to consider the Boat Slip as personal property, the Trustee bears the burden to overcome the *Beal Bank* presumption. The Trustee presented no proof to rebut the presumption that a tenancy by the entireties was intended. The Deed lists the names of both Debtor and Mrs. Mathews (Trustee's Ex. 14; Debtor's Ex. 24.), and there is an ampersand between their names. The Boat Slip was paid for with marital funds and marital borrowings. The six unities of title

were present. Thus, the Trustee did not overcome the presumption that the Boat Slip was held by Debtor and Mrs. Mathews as tenants by the entireties. The Trustee's objection to the claim of exemption for the Boat Slip, therefore, is overruled.

### E. *The American Express Mutual Fund Account is not owned as tenants by the entireties.*

 Debtor claimed the Mutual Fund Account exempt pursuant to Florida Statutes § 222.14, which states that annuities and the cash surrender value of insurance policies are exempt under certain circumstances. FLA. STAT. ANN. § 222.14 (West 2005). The Mutual Fund Account is not an annuity or cash surrender value of an insurance policy. As a result, the Mutual Fund Account is not exempt pursuant to this statute.

Even if Debtor claimed the Mutual Fund Account exempt as tenancy by the entireties, the exemption is disallowed. Although the *Beal Bank* presumption applies, by checking the Joint Tenant box, and not checking the Tenants by Entirety box, Debtor and Mrs. Mathews expressly disclaimed the tenancy by the entireties form of ownership. *See, e.g., Hurlbert v. Shackleton,* 560 So.2d 1276, 1279 (Fla. 1st Dist. Ct.App.1990) (stating in dicta that selection of the Joint Tenants with Right of Survivorship option from a menu of choices for corporate stocks and bonds was "self evident" intent of ownership). The Court has already not found Debtor's testimony with regard to the Investment Application credible. As a result, the Court finds that Debtor expressly disclaimed tenancy by the entireties as a form of owning the Mutual Fund Account. Thus, the Trustee met his burden of overcoming the presumption of tenancy by the entireties. The Trustee's objection to the Debtor's claim of exemption for the Mutual Fund Account is sustained and one-half of the funds currently held in this account, having a value of $10,659.52 in Ameriprise Investments (Debtor's Ex. 23), is property of the bankruptcy estate and subject to turnover.

### F. *The Highway Avenue Property and Picketville Property are owned as tenants by the entireties and are not the product of fraudulent transfers.*

 Property that would otherwise be excluded from the bankruptcy estate is not exempt if the property was acquired via a fraudulent transfer or conveyance. *See* FLA. STAT. ANN. § 222.29 (West 2005)[2] and FLA. STAT. ANN. § 726.105(1)(a) (West 2005)[3]. Section 726.105(2) sets forth eleven factors which a court may consider in determining actual intent to hinder, delay or defraud any creditor of the debtor. *See* FLA. STAT. ANN. § 726.105(2) (West 2005). A court may also consider other factors in determining intent. *In re Jennings,* 332 B.R. 465, 469–70 (Bankr.M.D.Fla.2005) ("The language of the statute makes clear that the badges of fraud are nonexclusive and that courts may consider other factors in determining a debtor's intent. 'In addi-

---

**2.** Florida Statutes, § 222.29, states:

An exemption from attachment, garnishment, or legal process provided by this chapter is not effective if it results from a fraudulent transfer or conveyance as provided in chapter 726.

**3.** Florida Statutes, § 726.105(1)(a) states:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a) With actual intent to hinder, delay, or defraud any creditor of the debtor....

tion, courts take into account the particular facts surrounding the conveyance, and avoid determining in a vacuum the presence or absence of a debtor's actual intent to hinder or delay a creditor.' ") (citing *In re Stewart*, 280 B.R. 268, 279 (Bankr. M.D.Fla.2001) and quoting *Gen. Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1498–99 (11 th Cir.1997)).

The Trustee claims that Debtor's purchase of the Highway Avenue and Picketville properties were fraudulent transfers. The Trustee asserts that if Debtor had not purchased these properties and titled them as tenants by the entireties, they would have been subject to execution by Arch Insurance and Carolina Insurance, who are BMC's and Debtor's creditors. According to the Trustee, before the transfers, these properties were assets of BMC and could have been used to pay the creditors; after the transfer, they could not because they became exempt. Thus, the Trustee avers that the transfers directly reduced the amount available to pay the creditors.

■■■■ The Court disagrees. First, irrespective of the statutes, the properties involved were mortgaged by exempt property, the Lenox Avenue property, which was exempt as tenants by the entireties property. A transfer of exempt property (or in this case, the transfer of loan proceeds from exempt property) to other exempt property is not a fraudulent transfer:

A debtor can only commit fraud on his creditors by disposing of such property as the creditor would have a legal right to look for satisfaction of his claim. . . . 'A sale, gift or other disposition of property which is by law absolutely exempt from the payment of the owner's debts cannot be impeached by creditors as in fraud on their rights. Creditors have no right to complain of dealings with property which the law does not allow them

to apply on their claims, even though such dealings are with a purpose to hinder, delay or defraud them.'

*In re Kimmel*, 131 B.R. 223, 229 (Bankr. S.D.Fla.1991) (quoting *Dean v. Heimbach*, 409 So.2d 157, 159 (Fla. 1st Dist. Ct.App. 1982)). As a result, by mortgaging the Lenox Avenue property, an exempt property, and using it as collateral to purchase other properties as tenants by the entireties, the transfers are beyond the scope of the statute. Based upon this alone the Trustee's objection is overruled.

■■■ However, even assuming the transfers were not from exempt property to exempt property, the Trustee's objections would still be overruled, as the Trustee failed to prove by a preponderance of the evidence that the transfers were fraudulent. There was no showing that BMC was insolvent at the time the transfers were made, even though BMC was admittedly in need of cash to complete the winding up of the corporation. There was no showing that the purchase price was inadequate. On his schedules, Debtor values the Picketville Property at $100,000 and Highway Avenue Property at $50,000. (Trustee's Ex. 1; Debtor's Ex. 1.) The Picketville Property is unencumbered by liens. The Highway Avenue Property, according to Debtor's schedules, has a lien of $31,901.39. Thus, as of the Petition Date, the values of the properties were $118,000. Debtor paid $105,000 for the properties. BMC purchased the properties for approximately $140,000: the Highway Property was purchased by BMC for approximately $55,000 (Tr. Vol. II at p. 42, lines 2–10), and the Picketville Property was purchased for approximately $85,000. (Tr. Vol. II at p. 42, lines 14–19.) A $35,000 discrepancy is not enough to warrant the transfer fraudulent by a preponderance of the evidence. Furthermore, the monies paid by Debtor for the properties went to

BMC and were used to pay corporate obligations. The Trustee presented no evidence showing that the monies somehow ended back up in Debtor's pocket; the Court finds that assets were merely traded for other assets.

Therefore, the Highway Avenue Property and the Picketville Property were not acquired via a fraudulent transfer. As such, the properties are exempt as tenants by the entireties properties. The Trustee's objection with respect to these properties is overruled.

### G. *The Homestead is exempt, as 11 U.S.C. § 522(o) is inapplicable.*

Property that is claimed exempt as a homestead must be reduced by the amount of any value attributable to the property that was converted from non-exempt property to exempt property with the intent to hinder, delay or defraud a creditor. 11 U.S.C. § 522(o) (2005).[4] The Trustee asserts that the conversion of the Lenox Avenue Property into a check which was deposited into Debtor and Mrs. Mathews' joint checking account and then used to pay off their Homestead mortgage was a transfer of non-exempt property to exempt property in violation of § 522(o). The Trustee asserts that the original $231,952.23 check was not exempt because the conversion was fraudulent pursuant to

Florida Statutes, § 222.30(2)[5]. According to the Trustee, although Debtor and Mrs. Mathews jointly owned the Lenox Avenue Property pledged as collateral, only Debtor signed the promissory note and HUD–1 loan statement, and the checks were made payable to Debtor only. Thus, the Trustee asserts, the property pledged to secure the loan was tenancy by entireties but the loan proceeds were not, hence causing the loan proceeds to be non-exempt property.

■ The Court disagrees. The Lenox Avenue Property was owned as tenants by the entireties, and the fact that Debtor alone signed the documents and that the checks were made out to Debtor solely does not make the loan proceeds non-exempt. The loan proceeds were deposited into Debtor and Mrs. Mathews' *joint* checking account, which is also owned as tenants by the entireties, pursuant to *Beal Bank*. Debtor then used the loan proceeds to pay off and acquire other tenants by the entireties property: including the Boat Slip, the Homestead, and the Picketville and Highway Avenue properties. The Court finds that the loan proceeds were tenants by the entireties property, as the evidence presented by the Trustee does not warrant a violation of F.S. § 222.30(2).

As a result, § 522(o) is not triggered. Debtor transferred exempt property into other exempt property. Debtor testified

---

**4.** Section 522(o) states in pertinent part:

(o) For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of an interest in—

(4) real or personal property that the debtor or a dependent of the debtor claims as a homestead, shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10–year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date

the debtor had held the property so disposed of.

**5.** Florida Statutes, § 222.30(2) states:

Any conversion by a debtor of an asset that results in the proceeds of the asset becoming exempt by law from the claims of a creditor of the debtor is a fraudulent asset conversion as to the creditor, whether the creditor's claim to the asset arose before or after the conversion of the asset, if the debtor made the conversion with the intent to hinder, delay, or defraud the creditor.

FLA. STAT. ANN. § 222.30(2) (West 2005).

at the hearing that the reason he paid off the mortgage on his homestead was to consolidate his debts into one because he was retiring and living off a fixed income. (Tr. Vol. I at p. 81, lines 20–24.) It is of no consequence that Debtor chose to pay off only exempt assets. Thus, because Debtor merely transferred exempt property into other exempt property, the Court finds there was no transfer in violation of § 522(o). The Trustee's objection is accordingly overruled.

### CONCLUSION

The Court recedes from its prior ruling in *McAnany* and holds that personal property owned by a married couple triggers a presumption that the personal property is owned as tenants by the entireties. The Stock is not owned as tenants by the entireties. Therefore, pursuant to 11 U.S.C. § 541(a)(6), one-half of the $85,000 in cash, $1,785 in postpetition dividends and 4,250 shares of Ameris Bancorp stock received postpetition as a result of the First National Bancorp stock is property of the bankruptcy estate and must be turned over to the Trustee. The household goods and furnishings, and the Boat slip are owned as tenants by the entireties and are therefore exempt. The Mutual Fund Account is not exempt and one-half of the funds currently held in this account, having a value of $10,659.52 in Ameriprise Investments, is property of the bankruptcy estate and subject to turnover. The Highway Avenue Property and Picketville Property are owned as tenants by the entireties and are not the product of fraudulent transfers. Thus, they, too, are exempt. Finally, the loan proceeds from the mortgage of the Lenox Avenue Property are exempt as tenants by the entireties property, and Debtor transferred exempt property into other exempt property when he paid off his mortgage on his Homestead. An order in accordance with these Findings of Fact and Conclusions of Law will be separately entered.

### ORDER

This case came before the Court upon the Trustee's Objection to Debtor Robert L. Mathews' ("Debtor") Claim of Exemptions ("Objection") and the Trustee's Motion for Turnover of Property of the Bankruptcy Estate ("Turnover"). A hearing was held on May 11, 2006 and May 25, 2006 (the "Hearing"). In lieu of oral argument, the Court directed the parties to submit memoranda in support of their respective positions. Based upon Findings of Fact and Conclusions of Law separately entered, it is

ORDERED:

1. The Trustee's objections with respect to the Stock and the Mutual Fund Account are sustained. One-half of the $85,000 in cash, $1,785 in postpetition dividends and 4,250 shares of Ameris Bancorp stock received postpetition as a result of the First National Bancorp stock is property of the bankruptcy estate and Debtor is directed to turn it over to the Trustee within 20 days of the date of this Order. One-half of the funds currently held in the Mutual Fund Account, having a value of $10,659.52 in Ameriprise Investments, is property of the bankruptcy estate and Debtor is directed to turn it over to the Trustee within 20 days of the date of this Order.

2. The Trustee's objections with respect to the household goods and furnishings, the Boat slip, the Highway Avenue Property and the Picketville Property, and Debtor's Homestead are overruled.